322 So.2d 171 (1975)
Richard S. CALDWELL et al.
v.
TRANS-GULF PETROLEUM CORP. et al.
No. 56361.
Supreme Court of Louisiana.
November 3, 1975.
Rehearing Denied December 5, 1975.
*172 James E. Franklin, Jr., Shreveport, for defendants-applicants.
Graham Stafford, Schumacher, McGlinchey, Stafford, Mintz & Hoffman, New Orleans, for plaintiffs-respondents.
CALOGERO, Justice.
This case presents two legal issues for our determination:
(1) Is a fractional, undivided interest in a non-producing oil and gas lease a "security" *173 as defined in Louisiana's Blue Sky Law, La.R.S. 51:701 et seq.?, and
(2) Does a material issue of fact exist as to the liability of the three defendants herein who have been cast for return of the purchase price by a decision of the trial court sustaining plaintiffs' motion for summary judgment?
Plaintiffs, Richard S. Caldwell and Nano John Turchi, filed suit against Trans-Gulf Petroleum Corporation, Hugh M. Sneed, and William J. Sneed, among others, for the return of the purchase price of fractional, undivided interests in certain nonproducing oil and gas leases, and reasonable attorneys' fees. After securing admissions and answers to interrogatories, and taking several depositions, plaintiffs moved for and were granted summary judgment in their favor. On appeal to the Second Circuit that court unanimously affirmed the trial court's granting of plaintiffs' motion for summary judgment against the aforementioned parties. The trial court's award of attorneys' fees to plaintiffs was reversed and remanded by the Court of Appeal for further proceedings, because the court found that a genuine issue of fact existed as to the amount of such attorneys' fees.
We granted writs upon application of the aforementioned defendants.
Securities, as defined by R.S. 51:701(1), have to be registered with the Commissioner of Securities of the State of Louisiana. Failure to comply with the requirements of registration entitle purchasers of securities to recover the purchase price paid plus 6% interest from date of payment and reasonable attorneys' fees. See R.S. 51:715.
It is not denied that the fractional interests in the oil and gas leases purchased by plaintiffs were in fact not registered with the Commissioner of Securities for the State of Louisiana.[1]
Defendants contend, however, that interests in oil and gas leases are not securities under the provisions of the Louisiana Blue Sky Law, R.S. 51:701 et seq., hereinafter sometimes referred to as the Act.
Two pertinent provisions of the Act which bear upon resolution of this issue are 51:701(1) and 51:701(5).
R.S. 51:701 provides as follows:
"Definitions
"When used in this part, the following terms shall, unless the text otherwise indicates, have the following respective meanings:
"(1) `Security' shall include, any note, stock, treasury stock, bond, debenture, evidence of indebtedness, warehouse receipt, certificate of interest of participation, or the right to subscribe to any of the foregoing, certificates of interest in a profit sharing agreement, certificate of deposit for a security, collateral trust certificate, pre-organization certificate, pre-organization subscription, voting trust certificate, any transferable share, investment contract, or beneficial interest in title to property, profits or earnings, or in general, any interest or instrument commonly known as a `security,' or any certificate of interest or participation in, temporary or interim bond, debenture, note, certificate, or receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. `Security' does not include any insurance or endowment policy or annuity contract fixed or variable, which is authorized to be written pursuant to Title 22 of the Louisiana Revised Statutes of 1950, as amended. (Emphasis provided)
*174 ". . . . . .
"(5) `Issuer' shall mean and include every person who proposes to issue, has issued or who shall hereafter issue any security. Any person who acts as a promoter for and on behalf of a corporation, trust or unincorporated association or partnership of any kind to be formed shall be deemed to be an issuer. With respect to interests in oil, gas or mineral leases, royalties, or servitudes, any person who shall divide any interest inany such securityfor the purpose of sale of fractional parts thereof to the public shall be deemed an issuer." (Emphasis provided)
Although the Act does not in the definition of "security" specifically denominate fractional interests in oil, gas, and other minerals as securities, the definition of "issuer," as may be seen from the underscored language above, includes persons "who shall divide any interest" in oil, gas or mineral leases "for the purpose of sale of fractional parts thereof to the public." In this very sentence the type of mineral leasehold interest with which we are concerned in this lawsuit is referred to as a security (". . . in any such security.")
The apparent intent of this provision is to make the public sale of mineral leasehold rights, which have been fractionalized by the offeror, subject to the Act, but to make the Act inapplicable both where the owner publicly sells the entirety of his interest, and where he creates a fractional interest but not for the purpose of sale to the public.[2]
Although we agree with the result of the Court of Appeal in this case, that court relied upon the term "beneficial interest in title to property" (which is part of the definition of "security" in the Act) as including these sales of fractional working interests in non-producing oil and gas leases.
We find it unnecessary to conclude that interests in oil, gas, and mineral leases, or fractional interests thereof, fall within the language "beneficial interest in title to property, profits or earnings," the provision in the Act's definition of "security" most nearly encompassing those mineral leasehold interests,[3] in light of the fact that 51:701(5) so clearly describes as a security the limited type of oil, gas, or mineral lease interest which is encompassed within the Act, namely, interests which have been divided for the purpose of sale of fractional parts thereof to the public.
Defendants argue that the inclusion in the act of the "issuer" definition of R.S. 51:701(5), with its clear reference to certain sales of leasehold mineral interests as a "security," was merely an unfortunate drafting error and that the statute is in fact ambiguous with respect to whether mineral interests of any character were intended to be included in Louisiana's Blue Sky Law. In this argument they rely entirely upon the fact, earlier related herein, that the definition of "security" at R.S. 51:701(1) does not specifically include the sale of interests in oil and gas leases. They point out that the Louisiana Act, which was enacted in 1940, was apparently patterned on the federal Securities Act of 1933, and that the federal statute specifically included in the definition of security "fractional undivided interest in oil, gas, or other mineral rights." 15 U.S.C. § 77b(1). Their argument is that patterning our state statute upon the federal act and yet excluding *175 from the definition of security an item specifically included in the federal statute is indicative of the legislative intent to exclude from the definition of security in the state act the "fractional undivided interest in oil, gas, or other mineral rights."[4]
While the foregoing is not, arguably, entirely without merit, we feel that the language contained in 51:701(5) defining "issuer" is much too clear to leave any serious doubt that the fractionalized, undivided interests sold by these defendants in non-producing oil and gas leases were securities, subject to regulation under the Louisiana Blue Sky Law.[5]
We note that the Court of Appeal in its opinion did not specifically find that defendants' public sales were of leasehold rights which had been fractionalized by defendant-offerors, but it is evident from a review of the record that such was the case. The secretary, Mr. William J. Sneed, admitted that he periodically received breakdowns of the people who had purchased fractional interests, along with the particular undivided fractional interest purchased by each such person. The president, Mr. Hugh Sneed, testified that the company was attempting to raise money by soliciting sales from members of the public, that he knew that fractional interests were being sold, and that "sometimes they got orders in the field when people would confirm then cancel out and it would place the company in a mighty embarrassing position." It is evident, therefore, that defendants were not simply selling the entirety of acquired interests nor simply creating fractional interests for purposes other than sales to the public. But rather they were fractionalizing the leasehold rights prior to and for the purpose of sale to the public.
Alternatively defendants contend that the sales here involved are exempt transactions under the provisions of R.S. 51:705(12), and that uncontroverted facts in the record, including affidavits, indicate same.
R.S. 15:705 provides: "Exempt Transactions
(12) Any transaction pursuant to an offer directed by the offeror to not more than ten persons in this state during any period of twelve consecutive months, whether or not the offeror or any of the offerees is then present in this state, if:
(a) The seller reasonably believes that all buyers in this state are purchasing for investment, and;
(b) no commissions or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer *176 in this state; but the commissioner may by rule or order, as to any security or transaction or any type of security or transaction, withdraw or further condition this exemption, or increase or decrease the number of offerees permitted, or waive the conditions in subparagraphs (a) and (b) with or without the substitution of a limitation on remuneration." (Emphasis provided)
Defendants presented depositions and affidavits in connection with the motion for summary judgment to the effect that they did not direct their offer to more than ten persons in this state during any period of twelve consecutive months, that they reasonably believed that all buyers in the state were purchasing for investment, and that no commission or other remuneration was paid or given for soliciting any prospective buyer in the state.
From the depositions of William Sneed, Hugh Sneed and Clarence L. Apple, Jr., it is apparent that a commission of ten percent was paid to Apple for consummating the sale of fractional interests in the gas leases. Thus, defendants' contention essentially is that Apple and others were not paid for soliciting prospective buyers but rather were paid for selling the fractional interests.
We agree with the Court of Appeal's treatment of this argument and its expression that accepting as true all defendants' contentions, at a very minimum, the commission paid on a sale is an indirect remuneration for the solicitation of a prospective buyer. See R.S. 51:705(12)(b). The transactions involved were thus not exempt under Section 705(12). That section of the statute makes exempt any transaction pursuant to an offer directed by the offeror to not more than ten persons in this state in a period of twelve consecutive months,[6] only if the seller reasonably believes that all buyers in the state are purchasing for investment and no commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer in this state.
The sole remaining contention by defendants is that for liability of William J. Sneed and Hugh M. Sneed to attach under the statute they must be found to be included in 51:715(B) which provides:
R.S. 57:715. Civil Liabilities
. . . . . .
"B. Every person who directly or indirectly controls a seller liable under Subsection (A), every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable." (Emphasis provided)
The Court of Appeal found that no dispute exists in regard to the actions of Hugh M. Sneed and William J. Sneed which render them personally liable under the provisions of 51:715(B) as amended by Act 69 of 1969, concluding that they were officers or directors of the seller who did know and/or in the exercise of reasonable *177 care could have known of the existence of the facts by reason of which the liability is alleged to exist.
The supportive evidence showed without contradiction that these two individuals were the principal officers of Trans-Gulf Petroleum Corporation. They admitted attending all directors' meetings and having full knowledge of all material facts surrounding solicitations and sales, as well as the non-registry of the securities involved.
For the foregoing reasons the writ heretofore issued is recalled and the judgment of the Court of Appeal is affirmed.
DIXON, J., dissents and assigns reasons.
BOLIN, J., takes no part.
DIXON, Justice (dissenting).
I respectfully dissent.
It seems to me that the blue sky law, being penal in nature, should not be expanded to control transactions not clearly included in the definitions of "securities."
Oil, gas and mineral leases in Louisiana are not securities. They are real rights. In Louisiana, an undivided interest in land and an undivided interest in mineral leases are, in general, treated alike.
Contrary to the view of the majority, the preferred interpretation of R.S. 51:701(1) should be that, when our act, patterned on the federal act (which included oil, gas and mineral leases in its definition of securities) omitted oil, gas and mineral leases from the definition of securities, the omission was deliberate. The reference to oil, gas and mineral leases in R.S. 51-701(5) would more logically seem to be a legislative oversight.
NOTES
[1] Defendants Hugh M. Sneed and William J. Sneed admitted in deposition testimony and in formal pleadings that not only were the interests purchased by plaintiffs not registered with the Commissioner of Securities for the State of Louisiana, but this fact was known to them. They contend that they were "attempting to register same."
[2] This view which we adopt has heretofore been expressed in Lyman, Securities Regulation in LouisianaA Practical Introduction to the Blue Sky Law, 16 La.B.J. 327 (1969).
[3] In fact oil, gas, and mineral leasehold interests generally are apparently not securities under the Act, as we have noted above. Rather only interests in oil, gas, or mineral leases which have been divided for the purpose of sale of fractional parts thereof to the public are securities. R.S. 51:701(5).
[4] The Securities Act of 1933 made no mention at all of oil, gas, or other mineral rights. Securities Act of 1933, c. 38, § 2, 48 Stat. 74 (1933). In 1934, however, the original act was amended to include in its definition of "security" "fractional undivided interest in oil, gas, or other mineral rights." Ch. 404, § 201, 48 Stat. 905 (1934). The 1934 Amendment also added these interests to the definition of "issuer" by means of the following language:

". . . except that with respect to equipment-trust certificates or like securities, the term `issuer' means the person by whom the equipment or property is or is to be used; and except that with respect to fractional undivided interests in oil, gas, or other mineral rights, the term `issuer' means the owner of any such right or of any interest in such right (whether whole or fractional) who creates fractional interests therein for the purpose of public offering." Id.
[5] It is noteworthy, although not controlling, that the Louisiana Securities Commissioner has in fact registered fractional shares such as are at issue here. One of the defendants in this case, Hugh M. Sneed, stated at his deposition that his corporation had attempted to register the interests through "presentation of the Schedule D to the Securities Commission of the State of Louisiana."

Moreover, the Attorney General has twice rendered opinions the import of which is that oil, gas, and mineral interests are not outside the purview of the Blue Sky Law. 1946-48 Op.Att'y.Gen. 1019 (1947); 1932-34 Op.Att'y.Gen. 530 (1934).
[6] A 1972 amendment to this section of the Act, (See Acts 1972, No. 725, § 2), changes the number of offerees to whom an offeror can sell shares, while remaining exempt from regulation, from ten to twenty-five.